O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY A. SLOAN, | NO. CV 08-07479-MAN |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| | AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed a Complaint on November 18, 2008, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's applications for a period of disability ("POD"), disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On February 25, 2009, the parties consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on May 13, 2009, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the case to the Commissioner for the correction of legal errors and factual deficiencies; and defendant asks that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his applications for a POD, DIB, and SSI on September 6, 2006, alleging an inability to work since March 4, 2006, due to bipolar type II disorder and drug and alcohol addiction. (Administrative Record ("A.R.") 88-89, 93-98, 105-111.) He has past relevant work experience as a nurse's assistant and a licensed practical nurse. (A.R. 107.)

The Commissioner denied plaintiff's claim for benefits initially and upon reconsideration. (A.R. 45-49, 51-55.) On March 10, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Sally C. Reason ("ALJ"). (A.R. 21-40.) On May 5, 2008, the ALJ denied plaintiff's claims (A.R. 13-20), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 3-5).

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act through the date of the ALJ's decision. (A.R. 19.) The ALJ further found that plaintiff has not engaged in substantial gainful activity since his alleged disability onset date. (A.R. 20.)

The ALJ determined that plaintiff has "severe" impairments of bipolar type II and drug/alcohol abuse (in remission) but does not have an impairment or a combination of impairments that meets or equals in

severity any impairment listed in Appendix 1 to Subpart P of Regulation No. 4. (A.R. 20.)

The ALJ further found that plaintiff has the residual functional capacity ("RFC") for work at all exertional levels, as limited "only to preclusion on jobs requiring frequent to continuing high-pressured negotiations with other people as a critical factor." (A.R. 20.) The ALJ determined that plaintiff's functional limitations did not preclude him from performing his past relevant work as a nurse's assistant and a licensed practical nurse. (*Id.*)

Accordingly, the ALJ concluded that plaintiff has not been under a disability within the meaning of the Social Security Act at any time through the date of the ALJ's decision. (A.R. 20.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges a single issue:  whether the ALJ considered plaintiff's treating psychiatrist's opinion properly.  (Joint Stipulation ("Joint Stip." at 4.)  For the reasons set forth below, the

Court concludes that she did not.

**I.    The ALJ Failed To Set Forth Specific And Legitimate Reasons For Rejecting The Opinion Of Plaintiff's Treating Psychiatrist.**

In assessing a claimant's RFC, the Social Security Administration's regulations favor "the opinion of a treating physician over non-treating physicians." Orn, 495 F.3d at 631; *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Generally, a treating physician's opinion is given greater weight because "'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted). If a treating physician's opinion is "well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If there is "substantial evidence" in the record that contradicts the opinion of a treating physician, such as an examining physician's opinion supported by independent clinical findings, the opinion of the treating physician is no longer entitled to controlling weight. Orn, 495 F.3d at 632. However, a finding that the treating physician's opinion "is not entitled to controlling weight does not mean that the opinion is rejected." Social Security Ruling 96-29 at 1 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test

for controlling weight."). In this instance, the Social Security regulations still require deference to the treating physician's opinion, but the weight accorded it is governed by the factors listed in the regulations, such as length, nature, and extent of the treatment relationship, frequency of examination, and supportability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Orn, 495 F.3d at 632-33. When the opinion of a treating physician is contradicted, it may be rejected by the ALJ only for "specific and legitimate" reasons based on substantial evidence in the record. Reddick, 157 F.3d at 725; Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

Plaintiff treated with psychiatrist Elizabeth Cowart, M.D., every two to four weeks beginning in July 2006.[1] (A.R. 287.) In an October 5, 2006 Mental Disorder Questionnaire Form, Dr. Cowart diagnosed plaintiff with bipolar II disorder, most recent episode depressed, and polysubstance dependence in early remission.[2] (A.R. 198.) Dr. Cowart opined that:

---

[1] By way of background, plaintiff was hospitalized on July 5, 2006, due to a suicide attempt. (A.R. 157-59.) He was brought in by the fire department and admitted as a danger to himself after overdosing on an unknown amount of pills and being found with a gun in his hand wanting to "blow his brains out." (A.R. 157.) The admitting diagnosis was major depression with a Global Assessment of Functioning (GAF) of 20 (indicating "some danger of hurting self or others"). (A.R. 159; Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000) ("DSM-IV-TR").) Plaintiff's highest GAF during 2006 was 50 (indicating "serious symptoms" or "any serious impairment in social, occupational, or school functioning"). (*Id*.) Plaintiff was discharged on July 9, 2006, and began treating with Dr. Cowart shortly thereafter on July 29, 2006. (A.R. 287.)

[2] According to http://www.webmd.com, "[b]ipolar is a complex illness. There are many different symptoms -- and several different types -- of bipolar disorder. The primary symptoms of the disorder are dramatic and unpredictable mood swings. The various types of bipolar disorder range from mild to severe."

6

>With continued sobriety and psychiatric care, [plaintiff's] condition will likely improve.  However, given his recent relapse with stimulants, prescription narcotics and alcohol as well as his serious suicide attempt three months ago, he is currently at great risk for destabilization. . . .  He will remain at risk for relapse with significant stressors.  His symptoms will worsen i[f] he is not involved in ongoing, consistent, and supportive treatment.

(A.R. 199.)

Dr. Cowart further opined that, "although [plaintiff] sometimes presents well, he continues to experience functional lability related to his depressive and manic symptoms."[3] (A.R. 197.)  Dr. Cowart stated that plaintiff "often becomes anxious and depressed and will not get out of bed for a couple of days due to a feeling of impending doom." (*Id*.)  Dr. Cowart assessed plaintiff with a GAF of 55.[4] (A.R. 199.)  Dr. Cowart reported that plaintiff "has difficulty completing everyday household

---

[3]  According to http://www.webmd.com, symptoms of mania may include "excessive happiness, excitement, irritability, restlessness, increased energy, less need for sleep, racing thoughts, high sex drive, and a tendency to make grand and unattainable plans.  Depression symptoms may include sadness, anxiety, irritability, loss of energy, uncontrollable crying, change in appetite causing weight loss or gain, increased need for sleep, difficulty making decision, and thoughts of death or suicide."

[4]  A GAF of 55 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR, 34.

7

routines as evidenced by his inability to maintain a residence.[5]  He also sometimes requires the assistance of his case manager to complete simple paperwork."  (A.R. 198.)

After approximately one year of treating plaintiff on a regular and routine basis, Dr. Cowart completed an October 27, 2007 Mental Residual Functional Capacity Questionnaire (the "Questionnaire") in which she confirmed her original diagnosis of bipolar II disorder with polysubstance dependance, and she opined that plaintiff was "currently depressed."  (A.R. 287.)  Dr. Cowart reported that plaintiff's depressive and manic episodes cause him to have poor concentration and result in plaintiff having an inability to care for himself or engage in meaningful activities.  (*Id*.)  Dr. Cowart noted that, in December 2006, plaintiff was admitted to Project New Start,[6] was given housing, and was "doing well."  (A.R. 241.)  However, a month later, plaintiff reported "ups and downs," and in February 2007, plaintiff reported increased irritability and anxiety.  (A.R. 234-40.)  In October 2007, plaintiff was more depressed and hopeless, and he started self-medicating with marijuana and stated that he had plans to drive his bike into traffic.  (A.R. 280.)  Dr. Cowart assessed plaintiff with a GAF of 30,[7] with a

---

[5]  Dr. Cowart noted that plaintiff had been homeless until moving into the LA Family Housing Shelter in August 2006.  (A.R. 198.)

[6]  Project New Start is a structured living center and drug and alcohol recovery home in which a 24-hour staff ensures that the residents eat, shower, and clean up their rooms.  (A.R. 30.)

[7]  A GAF of 30 indicates behavior that is considerably influenced by delusions or hallucinations, serious impairment in communications or judgment, or a general inability to function in almost all areas.  DSM-IV-TR, 34.

8

highest GAF of 65[8] during 2007.  (A.R. 287.)

Critically, in the Questionnaire, Dr. Cowart provided an assessment of plaintiff's ability to work and opined that he was "moderately" limited in several functional areas[9] and was "markedly" limited in his ability to tolerate normal levels of stress.[10]  (A.R. 290-91.)  Dr. Cowart opined that plaintiff's condition would result in "good" days and "bad" days and that he would miss more than four days of work per month.  (A.R. 291.)  Dr. Cowart further opined that plaintiff would experience three episodes of decompensation within 12 months, each lasting at least two weeks in duration.  (A.R. 292.)  In addition, Dr. Cowart stated that plaintiff's "sleep disturbance causes [an] unpredictable schedule" and "difficulty awakening in [the] morning . . . [that] would impact morning hours at a regular job."  (*Id*.)  Finally, Dr. Cowart opined that plaintiff's prognosis is poor without treatment, and fair to good with treatment.  (A.R. 287.)

---

[8]  A GAF of 65 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  DSM-IV-TR, 34 (4th ed. 2000)

[9]  Specifically, Dr. Cowart opined that plaintiff was "moderately" limited in his ability to:  accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  (A.R. 291.)

[10]  A "moderate" limitation is defined as follows: "there is moderate limitation in this area but the individual is still able to function satisfactorily."  (A.R. 290.)  A "marked" limitation is defined as follows: "there is serious limitation in this area.  The ability to function is severely limited but not precluded."  (*Id*.)

9

1    In her written decision, the ALJ rejected Dr. Cowart's opinion
2 regarding the aforementioned limitations on plaintiff's ability to work
3 and found that plaintiff is capable of all types of work, except for
4 jobs "requiring frequent to continuing high-pressured negotiations with
5 other people as a critical factor." (A.R. 20.) In addition, the ALJ
6 rejected Dr. Cowart's opinion because: plaintiff "functions well when
7 compliant with medication and free of drugs and alcohol"; and plaintiff
8 "worked on a sustained basis in the pre-alleged onset years,
9 notwithstanding a history of drug/alcohol abuse and other mental
10 impairments." (A.R. 19.) When examined in the light of the record as
11 a whole, not only does the ALJ's RFC assessment lack the support of
12 substantial evidence but also the reasons articulated by the ALJ for
13 rejecting Dr. Cowart's opinion fall short of the "specific and
14 legitimate" standard contemplated by the Ninth Circuit; thus, those
15 reasons do not withstand scrutiny.

17    First and foremost, there is no substantial evidence in the record
18 to support the ALJ's conclusion that plaintiff is "limited only by [an]
19 inability to perform jobs that involve frequent to continuing and high
20 pressured negotiations with other people as a critical factor (e.g.,
21 certain sales jobs, certain lawyer jobs)." (A.R. 14.) In fact, the
22 record is entirely devoid of any physician's and/or vocational expert's
23 opinion that supports the ALJ's RFC assessment. Strikingly, in its
24 portion of the Joint Stipulation, the Commissioner fails to cite any
25 evidence whatsoever to support the ALJ's RFC assessment. (*See* Joint
26 Stip. at 13-19.) Although the ALJ stated that her conclusion is
27 "essentially consistent with" and "buttressed by" the April 5, 2007
28 report of consultative examiner Ernest A. Bagner, M.D., nowhere in Dr.

Bagner's report is there any support for the limitation asserted by the ALJ.[11] (A.R. 220-23.)  Indeed, it appears that the ALJ's RFC assessment is nothing more than her own lay medical opinion, and it is well-settled that an ALJ may not render a medical judgment and interject her own medical opinion, nor may she substitute her own diagnosis for that of the claimant's physician.  See Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)(an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion")(*internal quotation marks and citation*

---

[11]  Although the ALJ states that Dr. Bagner's assessment supports her opinion, Dr. Bagner did not set forth the limitation the ALJ found, *i.e.*, the limitation on "frequent to continuing high-pressured negotiations with other people."  (A.R. 20, 223.)  Specifically, Dr. Bagner opined that: "[plaintiff] would have zero to mild limitations maintaining concentration and attention and completing simple tasks.  He would have mild limitations interacting with supervisors, peers and the public, completing complex tasks and completing a normal workweek without interruption.  He would have mild to moderate limitations handling normal stresses at work."  (A.R. 223.)  Dr. Bagner diagnosed plaintiff with mood disorder, not otherwise specified, not bipolar disorder.  (A.R. 220-23.)

Critically, Dr. Bagner did not review any of plaintiff's medical records. (A.R. 220.)  Thus, it is unclear whether Dr. Bagner's assessment of plaintiff is based on a sufficiently complete picture of plaintiff's condition.  See 20 C.F.R. §§ 404.1517, 416.917 ("If we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition."); Nalley v. Apfel, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000)("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner"); *see also* Ladue v. Chater, 1996 WL 83880, *5 (N.D. Cal. 1996)(requiring remand where "[t]he ALJ failed to conform to 20 C.F.R. § 404.1517 requiring that the consultative examiner be provided with necessary background information regarding the claimant's condition [and] it appears from the record that the ALJ gave [the consultative examiner's] consultative report considerable weight, even though [the consultative examiner] was lacking important background information regarding plaintiff").  As a result, Dr. Bagner's opinion may not constitute substantial evidence.

*omitted*); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)(an ALJ "must not succumb to the temptation to play doctor and make [her] own independent medical findings").[12]

Moreover, the ALJ's rejection of Dr. Cowart's opinion, on the ground that there is evidence that plaintiff "functions well when compliant with medication and free from drugs and alcohol," is not a legitimate basis upon which to reject the opinion of plaintiff's treating psychiatrist. (A.R. 19.) As the ALJ recognized, plaintiff suffers from bipolar disorder, which is episodic in nature. (*See* A.R. 231-53.) While there is evidence that plaintiff is able to function when compliant with medication and free from drugs and alcohol, there is significant evidence of plaintiff's episodes of decompensation, depression, mania, and mood deterioration even when he is compliant with medication and substance free. (A.R. 231-53, 275-85.) Indeed, the record is replete with notations of plaintiff's "ups and downs" -- a pattern consistent with the very essence of bipolar disorder. (*See, e.g.,* A.R. 231-46, 248-49, 275-82, 297.) After having seen plaintiff regularly and consistently to treat his bipolar condition, Dr. Cowart is uniquely qualified to opine as to plaintiff's mental limitations and to assess whether plaintiff can withstand the normal stresses associated with work. The ALJ cannot legitimately reject Dr. Cowart's opinion because there is evidence that plaintiff's symptoms associated with his

---

[12] Plaintiff notes in his portion of the Joint Stipulation that the limitations set forth by the ALJ in her RFC assessment are essentially "meaningless," because the examples of the jobs cited by the ALJ that plaintiff was precluded from performing, *to wit*, "certain sales jobs [and] certain lawyer jobs," are beyond plaintiff's skill/ability notwithstanding his condition. (Joint Stip. at 11; A.R. 14.) The Court does not disagree with plaintiff's observation.

12

bipolar disorder have abated for certain periods of time.

Further, the ALJ's rejection of Dr. Cowart's opinion, purportedly based on evidence that plaintiff was able to work on a sustained basis prior to the alleged onset of his disability and notwithstanding his history of drug and alcohol abuse, also does not meet the "specific and legitimate" standard. (A.R. 19). The fact that plaintiff's condition may have been somewhat stable before the alleged onset of his disability does not detract from the severity of his condition on and after his disability onset date, *i.e.*, March 4, 2006. Moreover, the ALJ's observation that plaintiff "worked on a sustained basis" prior to his alleged disability onset date is not entirely accurate. Plaintiff's earning records reflect minimal earnings in 2002, *i.e.*, $2,835.05, and no earnings in 2003 and 2004. (A.R. 101.) This is hardly reflective of sustained work.

The ALJ's improper rejection of Dr. Cowart's opinion and substitution of her own lay medical opinion constitutes reversible error.

## II. **Remand Is Required**.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179

Case 2:08-cv-07479-MAN   Document 15   Filed 12/21/09   Page 14 of 15   Page ID #:380

("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

Although not raised as an issue by the parties, the Court notes a strong connection between plaintiff's substance abuse and his periods of decompensation. The ALJ dismissed this issue as a "moot point," yet, given plaintiff's documented relapses during the period in question, it is unclear whether or not plaintiff's substance abuse is a "contributing factor material to" his mental limitations. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001); *see also* Souza v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)(ALJ erred by failing to distinguish between substance abuse "contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol"). (*See e.g.,* A.R. 157 - plaintiff overdosed on pills in July 2006; A.R. 280, 282 - plaintiff reported using marijuana daily in September and/or October 2007.)

On remand, if after properly addressing plaintiff's treating psychiatrist's opinion, the ALJ concludes that plaintiff is disabled *and* there is evidence of his continuing drug and/or alcohol abuse, then the ALJ must undertake the requisite two-step analysis to determine whether plaintiff would still be found disabled if he stopped using drugs and/or alcohol. *See* Bustamante, 262 F.3d 949.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 21, 2009

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE